UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN Y. LEE, | Civil Action No. 17-1461 (SDW) |
| Petitioner, | |
| v. | OPINION |
| UNITED STATES OF AMERICA, | |
| Respondent. | |

**WIGENTON**, District Judge:

Presently before the Court is the motion of John Y. Lee ("Petitioner") to vacate, set aside, or correct his sentence brought pursuant to 28 U.S.C. § 2255. (ECF No. 1). Following this Court's Order to Answer (ECF No. 2), the Government filed a response to the motion (ECF No. 10), to which Petitioner has replied. (ECF No. 11). For the reasons set forth in this Opinion, this Court will deny Petitioner's motion and deny him a certificate of appealability.

**I. BACKGROUND**

On June 23, 2008, Petitioner, John Y. Lee pled guilty to charges of wire fraud and filing false tax returns based on his having defrauded his employer, Samsung, out of a considerable amount of money through the use of a fictitious company. (*See* Docket No. 08-443 at ECF Nos. 15-19). Following his guilty plea but prior to sentencing, however, Petitioner unlawfully fled the United States for South Korea, where he remained until he returned to the United States in 2016, at which point he was apprehended at the airport and returned for sentencing. (*See, e.g.,* Document 1 attached to ECF No. 10 at 3). On June 29, 2016, Petitioner appeared before this Court for sentencing. (*See* Document 2 attached to ECF No. 10).

1

At sentencing, Petitioner argued through counsel that, although the presentence report had recommended an enhancement of his sentence based on his having obstructed justice by fleeing the country, he should also be granted either a reduction of his guidelines level under U.S. Sentencing Guidelines § 3E1.1 for the acceptance of responsibility demonstrated by his guilty plea and voluntary return to the United States or a downward variance on that same basis. (*Id.* at 6-7). In support of that request, counsel for Petitioner argued that Petitioner's plea and willing return evinced his acceptance of responsibility for his fraud, and that his flight only occurred because of an extraordinary circumstance – the fact that Petitioner's girlfriend had been pregnant with his son at the time and Petitioner felt that his son needed his father. (*Id.*). Counsel further argued that Petitioner accepted responsibility by returning to the United States to turn himself in even though he was under no immediate threat of arrest had he remained with his son in South Korea. (*Id.* at 7).

This Court rejected that argument for the following reasons:

> At the outset, I would note that as calculated in the presentence report, I do believe the total offense level appropriately falls at a level 27. So I turn to the request from the defense for credit to be given to [Petitioner] for acceptance of responsibility. Obviously, given the fact that [Petitioner] absconded for eight years, that's a very high hurdle to . . . cover and cross. So the issue of what is extraordinary about what [Petitioner] has done, I just don't find that persuasive, quite frankly. This whole notion that he voluntarily returned knowing he would be picked up [is suspect]. Maybe he knew, maybe he didn't know. It's been a long time. I'm not sure he knew he would be immediately arrested.
>
> And if he was so intent on actually coming back to face these charges, then why not contact his attorney? Why not fly into Newark? Why fly into Los Angeles? I mean, his family was here. I don't know that I give much credit to [Petitioner] for returning as counsel does because, as I said, sometimes people slip through the cracks and I'm not sure that he didn't think that he could slip through the cracks. Even if he thought that he was coming back for that purpose, I just don't find that to be extraordinary conduct warranting

> credit for acceptance of responsibility and so for that reason I deny that request.
>
> There's [also] a request for a variance. I don't find any basis to vary based on the facts and circumstances surrounding why we are here some eight years later as it relates to Mr. Lee.
>
> And I think it's very important to note that many individuals get sentenced and their families are completely destroyed. It happens regularly, which is why the goal is not to engage in criminal activity. But for you, [Petitioner], to say that you wanted to take the opportunity to raise your child, once again [demonstrates your] ignoring and showing a complete lack of respect for the law and somehow placing yourself in somewhat of a higher position than any other defendant that comes before the Court in making your situation one that requires some exceptional consideration, and it does not.

(*Id.* at 12-13). This Court thereafter sentenced Petitioner to seventy-five months imprisonment for the fraud count of his plea, and a concurrent term of thirty-six months imprisonment on the tax count of the Information to which he had pled guilty. (Docket No. 08-443 at ECF No. 28). Petitioner was also ordered to serve a three year term of supervised release upon the completion of his custodial sentence. (*Id.*). Following the issuance of Petitioner's sentence, this Court directly informed Petitioner that he had "14 days from . . . to [file] an appeal of his sentence" and that, if he could not afford the filing fee, he could "request that the Clerk of the Court file [a] notice of appeal on [his] behalf." (*See* Document 2 attached to ECF No. 10 at 18). Petitioner did not appeal his sentence, nor did he submit anything to the Court indicating that he wished to appeal or wished for the Clerk to file a notice of appeal on his behalf. (Docket No. 08-443 ECF Docket Sheet).

On or about February 23, 2017, however, Petitioner filed his current motion to vacate sentence. (ECF No. 1). In his motion, Petitioner contends that, after sentencing, he wished to appeal his sentence, but was not visited by counsel post-sentencing, and that counsel was therefore constitutionally ineffective because he had not conferred with him about a potential appeal. (*Id.*).

Both Petitioner's plea counsel, Paul B. Brickfield, and Petitioner have submitted certifications addressing the factual basis for Petitioner's claim, in large part agreeing as to the course of events which occurred before, during, and after sentencing. The following facts are drawn from those certifications.

Both Petitioner and counsel agree that Mr. Brickfield (hereafter "counsel") began representing Petitioner in 2007, and that counsel represented Petitioner both during plea negotiations and during Petitioner's sentencing hearing after his return from South Korea. (Document 1 attached to ECF No. 10 at 3; ECF No. 11 at 16). Following Petitioner's capture in Los Angeles, counsel met with Petitioner three times at Essex County Jail. (Document 1 attached to ECF No. 10 at 3; ECF No. 11 at 16). Although counsel states that he discussed with Petitioner his right to appeal at that time, Petitioner "cannot recall any advi[ce] on his appeal" but does recall discussing the presentence report and sentencing issues. (Document 1 attached to ECF No. 10 at 3; ECF No. 11 at 16). Counsel further states that they met again on the day of the sentencing, and that, at that time, he advised Petitioner that an appeal was unlikely to succeed if the Court rejected his acceptance of responsibility argument. (Document 1 attached to ECF No. 10 at 4; ECF No. 11 at 16). Petitioner recalls discussing the sentencing issues, but states that he does not recall any discussion of appellate matters. (Document 1 attached to ECF No. 10 at 4; ECF No. 11 at 16).

Following Petitioner's sentencing, Petitioner "asked [counsel] if anything could be done and [counsel] told him that in [his view] the District Court had not done or said anything that would [support] a viable appeal. [Petitioner] thanked [counsel] and said goodbye [and counsel] did not meet with Petitioner in the holding facility after the sentencing." (Document 1 attached to ECF No. 10 at 4; ECF No. 11 at 16-17). Petitioner does not directly dispute this statement by counsel, but states that he only said goodbye "as [he] was in shock after receiving [his] sentence" and he

4

was taken back to the holding area "thinking [his] lawyer [would] be by shortly to talk." (ECF No. 11 at 16-17). Although Petitioner stated in his initial petition that he had attempted to contact counsel to request that an appeal be filed but was unable to reach him (*See* Document No. 1 attached to ECF No. 1 at 4), Petitioner in his reply certification agreed with counsel's certification that "[Petitioner] never called or wrote [counsel] after [sentencing] asking about an appeal or telling [counsel] to file an appeal," despite the following events[1]: counsel meeting with Petitioner's father in July 2016 at which point no appeal was discussed or requested; Petitioner's sending counsel some paperwork to hold onto until Petitioner was transferred to his final prison destination, without requesting an appeal, which counsel then returned to him upon his arrival in prison; Petitioner's sending counsel a request to have certain personal items sent to him in August 2016, which again failed to contain any mention of an appeal; and the lack of any request for an appeal in any of the documents in counsel's files for Petitioner's case. (Document 1 attached to ECF No. 10 at 5-6; ECF No. 11 at 17). Indeed, counsel notes that the first time Petitioner mentioned an appeal to him was the letter Petitioner sent him requesting aid in drafting Petitioner's § 2255 motion, which counsel declined as Petitioner was claiming that counsel was constitutionally ineffective. (Document 1 attached to ECF No. 10 at 6). Most importantly, Petitioner's plea counsel certified that "Petitioner never requested that [counsel] appeal his sentence," which Petitioner certified was "correct." (*See* Document 1 attached to ECF No. 10 at 6 ¶ 24; *cf.* ECF No. 11 at 17 ¶ 24).

---

[1] In his reply certification, Petitioner does not dispute these facts, and, with the exception of noting that he sent the papers to be held temporarily during his transfer, "agreed" that counsel's assertion of these facts was "correct." (*See* ECF No. 11 at 17).

## II. DISCUSSION

### A. Legal Standard

A prisoner in federal custody may file a motion pursuant to 28 U.S.C. § 2255 challenging the validity of his or her sentence. Section 2255 provides, in relevant part, as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255. Unless the moving party claims a jurisdictional defect or a constitutional violation, to be entitled to relief the moving party must show that an error of law or fact constitutes "a fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Horsley*, 599 F.2d 1265, 1268 (3d Cir. 1979) (quoting *Hill v. United States*, 368 U.S. 424, 429 (1962)), *cert. denied* 444 U.S. 865 (1979); *see also Morelli v. United States*, 285 F. Supp. 2d 454, 458-59 (D.N.J. 2003).

### B. An evidentiary hearing is not required in this matter

28 U.S.C. § 2255(b) requires an evidentiary hearing for all motions brought pursuant to the statute "unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *United States v. Booth,* 432 F.3d 542, 545 (3d Cir. 2005); *United States v. Day*, 969 F.2d 39, 41-42 (3d Cir. 1992). "Where the record, supplemented by the trial judge's personal knowledge, conclusively negates the factual predicates asserted by the petitioner or indicate[s] that petitioner is not entitled to relief as a matter of law, no hearing is

required." *Judge v. United States*, 119 F. Supp. 3d 270, 280 (D.N.J. 2015); *see also Government of Virgin Islands v. Nicholas*, 759 F.2d 1073, 1075 (3d Cir. 1985); *see also United States v. Tuyen Quang Pham*, 587 F. App'x 6, 8 (3d Cir. 2014); *Booth*, 432 F.3d at 546. For the reasons set forth below, Petitioner's claims are without merit. Based on the record before this Court, and in light of the concessions made in Petitioner's reply certification (ECF No. 11 at 16-17), no hearing is required in this matter.

**C. Petitioner's Ineffective Assistance of Counsel Claim**

In his motion to vacate sentence, Petitioner presents a single claim – that he wished to file an appeal to challenge his sentence on the grounds that the Court had erred in denying him a reduction of his guidelines level for acceptance of responsibility and that his counsel proved constitutionally ineffective in failing to visit him after his sentence to discuss and ultimately file that appeal. As the Third Circuit has explained, such claims are governed by the Supreme Court's ruling in *Roe v. Flores-Ortega*, 528 U.S. 470 (2000):

> [in *Flores-Ortega*,] the Court addressed whether counsel may be found deficient for failing to file a notice of appeal absent specific instruction from the defendant not to do so. Because the question concerned whether counsel's representation was constitutionally defective, the Court held that the two-part *Strickland* test governed its inquiry. [*Roe*, 528 U.S. at 476-77.] Applying that standard to the particular facts before it, the Court held that "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480[.] The Court further explained that it "employ[ed] the term 'consult' to convey a specific meaning – advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id.* at 478[.] Additionally, the Court instructed that courts undertaking this inquiry, as with all ineffective-

7

> assistance claims, "take into account all the information counsel knew or should have known." *Id.* at 480 . . . (citing *Strickland* [*v. Washington*, 466 U.S. 668, 690 (1984)]).
>
> With respect to *Strickland*'s prejudice prong, the Court held that the harmless-error inquiry applied and that relief could not be granted unless the defendant "demonstrate[s] that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484[.] The Court did not identify any determinative factors in this regard, but did stress that "evidence that there were non-frivolous grounds for appeal or that the defendant at issue promptly expressed a desire to appeal will often be highly relevant." *Id.* at 485[.]

*United States v. Sherdrick*, 493 U.S. 292, 300-01 (3d Cir. 2007).

Although Petitioner asserts that counsel was constitutionally deficient in failing to consult with him regarding an appeal, because Petitioner and counsel agree that Petitioner "never requested that [counsel] appeal his sentence" (s*ee* Document 1 attached to ECF No. 10 at 6 ¶ 24; *cf.* ECF No. 11 at 17 ¶ 24), Petitioner could only show that counsel had a duty to consult with him regarding an appeal if he could demonstrate that "there [was] reason to think . . . that a rational defendant would want to appeal" under the circumstances of Petitioner's case.[2] *Flores-Ortega*, 528 U.S. at 480; *Sherdrick*, 293 U.S. at 300-01. Although the Supreme Court provided little concrete guidance on evaluating such a claim in *Flores-Ortega*, it did note that factors relevant to such a determination include whether Petitioner had any viable, nonfrivolous grounds for appeal,

---

[2] Petitioner's agreement with counsel's statement that Petitioner never requested an appeal and Petitioner's failure to otherwise demonstrate that he gave counsel reason to think that he was interested in appealing prevents him from establishing deficient performance on *Roe's* alternative, subjective basis. *See Flores-Ortega*, 528 U.S. at 480. Because Petitioner disputes the extent to which counsel consulted with him about the advantages and disadvantages of appealing, this Court assumes *arguendo* for the sake of this opinion that counsel did not fully consult with Petitioner sufficient to foreclose Petitioner's claim entirely. *See, e.g., Hodge v. United States*, 554 F.3d 372, 380 (2009) ("an attorney may not speak cursorily with a client about an appeal and call it a consultation").

8

whether the petitioner pled guilty which could indicate "that the defendant seeks an end to judicial proceedings," whether Petitioner waived his appellate rights, and whether a petitioner who pled guilty received the bargained-for sentence. *Flores-Ortega*, 528 U.S. at 480. Ultimately, the Court must consider all the information counsel knew or should have known in determining whether counsel had reason to think a rational defendant would have wanted to appeal.

In this matter, Petitioner pled guilty and received all of the benefits that were offered to him in his plea agreement at sentencing.[3] Although Petitioner ultimately received a harsher sentence than would have been imposed upon him at the time of his plea in 2008, that harsher sentence was not the result of any defect in his plea agreement or any lost benefit therefrom. Instead, the reason for Petitioner's harsher sentence lays entirely at his own feet – his sentencing range was ultimately higher than it would have been in 2008 because he unlawfully fled the country for the better part of the decade to avoid his prison sentence. The guidelines themselves were amended during his flight resulting in a higher base sentence, and his flight also cost him any reduction for acceptance of responsibility. Additionally, Petitioner's flight imposed upon him an added obstruction of justice increase in his guideline range. Petitioner's plea agreement, however, contained no promise that Petitioner would receive the acceptance of responsibility reduction, nor did it in any way prohibit the imposition of an obstruction increase in the event that Petitioner fled the country. (*See* Docket No. 08-443 at ECF No. 19). Thus, this Court does not find that Petitioner did not receive the sentence bargained for – he received all of the concessions bargained for in the

---

[3] Petitioner's plea agreement contained no promises regarding the ultimate sentence Petitioner would receive or the guidelines range in which he would fall, instead it contained only factual stipulations regarding the loss amounts and a promise that the two charges to which Petitioner did not plead guilty would be dismissed at sentencing. (*See* Docket No. 08-443 at ECF No. 19). The factual stipulations were factored into Petitioner's guidelines calculation at sentencing, and Petitioner's remaining two charges were, in fact, dismissed. (*See* Docket No. 08-443 at ECF No. 28). Petitioner thus received the benefits provided by his plea agreement.

9

agreement, and received a harsher than originally expected sentence only though his own actions. That Petitioner pled guilty and received the bargained for benefit under his plea agreement both weigh against the likelihood that a rational defendant in Petitioner's position would wish to file an appeal. While the fact that Petitioner retained his appellate rights in his plea agreement does not weigh against his claim, the Court finds that that factor provides little weight in either direction under these circumstances.

Although the circumstances surrounding Petitioner's plea weigh against the likelihood of a rational defendant wishing to appeal, there is one factor which weighs in favor of the likelihood that a rational defendant would want to appeal – that Petitioner received a harsher sentence than he would have received had he not fled in 2008. That factor, however, is undercut by two other issues present in this case – the fact that the increase is entirely due to Petitioner's own flight – which any rational defendant would understand would negatively impact his sentence, and the fact that Petitioner had no nonfrivolous issues to raise on appeal. Indeed, counsel himself certifies that he knew at the time of sentencing that an appeal of this Court's finding that Petitioner was not entitled to a reduction based on acceptance of responsibility had "little chance of success as a practical matter" as Petitioner's sentence was left to this Court's discretion and Petitioner's flight presented a significant hurdle to any reduction. (*See* Document 1 attached to ECF No. 10 at 3-4). Although Petitioner asserts that he does not recall counsel explaining his chances on appeal, Petitioner does admit in his certification that counsel explained to him the high likelihood of a much longer sentence based on his flight to South Korea prior to sentencing, so a rational defendant in Petitioner's position clearly would have understood that he was unlikely to receive the requested sentencing reduction for acceptance of responsibility. (*See* ECF No. 11 at 16; *cf.* Document 1 attached to ECF No. 10 at 3-4).

As to whether Petitioner had any nonfrivolous claims to present on appeal, Petitioner asserts that the only potential issue he had was his claim that he should have been accorded a sentencing reduction for acceptance of responsibility and that the Court's rejection of that request equated to double punishment for his flight. That claim, however, is patently without merit. As the comments to the Sentencing Guidelines explain, "[c]onduct resulting in an enhancement [of sentence] under [the obstruction of justice guideline, such as for flight prior to sentencing,] ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct," and it is only in "extraordinary cases" that both guidelines could be applied to the same defendant. *See* U.S.S.G. § 3E1.1. cmt. n. 4; § 3C1.1 cmt. n. 4(E); *see also United States v. Chambers*, 646 F. App'x 213, 216 n. 4 (3d Cir. 2016). As this Court explained at sentencing, there was nothing extraordinary about Petitioner's case – he fled the country to prevent his then unborn child from growing up without a father, and there is nothing extraordinary about a prison sentence separating a parent from their child – and thus there was no legitimate basis for finding that Petitioner's case warranted an acceptance of responsibility reduction in light of his flight from the consequences of his actions for the better part of a decade. *See e.g. United States v. Honken*, 184 F.3d 961, 970 (8th Cir. 1999) (when the commission refers to an 'extraordinary case,' it means a situation that is extremely rare and highly exceptional"); *United States v. Brown*, 80 F. App'x 794, 795 (3d Cir. 2003) (citing *Honken*, 184 F.3d at 970). Given the lack of extraordinary circumstances in Petitioner's case, and the fact that a claim such as Petitioner's proposed acceptance of responsibility claim would be reviewed only for clear error, it is clear that the claim Petitioner contends he would have pursued on appeal would have been meritless.[4] *See, e.g., Chambers*, 646

---

[4] The Court notes that the merit of Petitioner's proposed appellate claims has been considered only in determining that counsel's performance was not deficient under these circumstances. The Court has not considered the merit of Petitioner's proposed appeal in reference to the prejudice prong of

F. App'x at 216 n. 4; *Brown*, 80 F. App'x at 795-96. Petitioner thus had no nonfrivolous claims to present on appeal, which weighs against the likelihood that a rational defendant in Petitioner's position would have wanted to appeal.

Taking into account all of the information that counsel knew or should have known in this matter, including the extreme unlikelihood of success on Petitioner's acceptance of responsibility downward departure requests and Petitioner's agreement with counsel that he did not indicate to counsel that he was interested in taking an appeal in his underlying criminal matter, this Court concludes that Petitioner has failed to show either that he actually requested an appeal or that counsel had reason to know that a rational defendant in Petitioner's position would have wanted to appeal. Petitioner has failed to provide any evidence that he indicated to the Court or counsel that he wished to take an appeal, and in fact has admitted that he never requested such an appeal from counsel despite communicating with him several times after his sentencing, Petitioner had no nonfrivolous grounds for appeal, and Petitioner received all of the benefits bargained for in his plea agreement. Given these facts, counsel had no reason to believe that a rational defendant in Petitioner's position would have wanted to appeal, and as such he had no duty to consult with Petitioner after sentencing to see if Petitioner wished to appeal. *See Flores-Ortega*, 528 at 479-82. Thus, even if this Court assumes, *arguendo*, that Petitioner is correct in asserting that counsel never actually consulted with him to explain the advantages and disadvantages of an appeal, Petitioner has failed to show that his counsel's performance was deficient under the *Strickland*

---

*Strickland* as the merit of Petitioner's proposed appeal is largely irrelevant to whether he suffered prejudice under *Flores-Ortega*. *See* 528 U.S. at 482-83 (suggesting that prejudice results from the lack of an appeal in and of itself, and is not dependent upon the merit of the appellate claims involved). In any event, because Petitioner has failed to show deficient performance, this Court need not, and does not, reach the question of *Strickland* prejudice in this matter.

standard. *Id.* Petitioner is thus not entitled to relief on the sole claim presented in his § 2255 motion, and that motion is denied.

### III. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c) the petitioner in a § 2255 proceeding may not appeal from the final order in that proceeding unless he makes "a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). For the reasons expressed above, the sole claim raised in Petitioner's § 2255 motion is without merit, and Petitioner has thus failed to make a substantial showing of the denial of a constitutional right. A certificate of appealability is therefore denied.

### IV. CONCLUSION

For the reasons set forth above, Petitioner's motion to vacate his sentence (ECF No. 1) is DENIED, and Petitioner is DENIED a certificate of appealability. An appropriate order follows.

Dated: March 13, 2018                    *s/ Susan D. Wigenton*
                                         Susan D. Wigenton
                                         U.S.D.J.